UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| HUMA BASHEERUDDIN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 15-cv-4131 |
| ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE SOUTH SUBURBAN HOSPITAL, | ) | Judge John W. Darrah |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, Huma Basheeruddin, filed a Complaint against Defendant Advocate Health and Hospitals Corporation, alleging retaliation, racial and religious discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, breach of an United States Equal Employment Opportunity Commission ("EEOC") conciliation agreement, and racial discrimination pursuant to 42 U.S.C. § 1981. Defendant filed a Motion for Summary Judgment [31]. For the reasons set forth more fully below, Defendant's Motion for Summary Judgment [31] is granted in part and denied in part.

## **LOCAL RULE 56.1**

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A nonmovant's "mere

disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance. Local Rule 56.1(b)(3)(B). To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment."

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Plaintiff is a resident of Illinois. (DSOF ¶ 1.) Plaintiff is an observant Muslim and is of South Asian descent[1]. (PSOF ¶ 1.) Defendant is a hospital located in Hazel Crest, Illinois. (DSOF ¶ 2.) Plaintiff worked as a Nuclear Medicine Technician ("NMT") in the Nuclear Medicine Department of Advocate South Suburban Hospital from March 2000 to July 9, 2013. (*Id.* ¶ 3.) From 2012 to 2013, Plaintiff was one of four NMTs in the Nuclear Medicine Department. (*Id.* ¶ 5.) The Nuclear Medicine Department is part of the Diagnostic Imaging Department at South Suburban Hospital. (*Id.* ¶ 6.) The Director of the Diagnostic Imaging

---

[1] Plaintiff did not reference her race in any of her Statement of Facts, but there does not appear to be a dispute about Plaintiff's race.

2

Department is Ed Niemiec. (*Id.*) Deb Pederson was Plaintiff's interim manager for eight to twelve months in 2012. (*Id.* ¶ 7.) After Pederson, Plaintiff reported to Pam Kunath. (*Id.*)

In April 2011, Plaintiff filed a charge with the EEOC against Defendant. (*Id.* ¶ 66.) On July 18, 2011, Plaintiff and Defendant settled her charge and entered into a Mediation Agreement. (*Id.* ¶ 67.) Under the terms of the agreement, the parties agreed that "should any future issues arise concerning [Plaintiff's] terms or conditions of her employment, then [Plaintiff] can initiate a facilitated discussion process between her supervisor and/or his or her supervisor, herself and Human Resources by contacting Michele Gormack, Human Resources Generalist II or her replacement." (*Id.* ¶ 68.) The parties also agreed that Plaintiff's direct supervisor would submit performance evaluations to Human Resources for review prior to issuing the evaluation to Plaintiff and that Human Resources would be present when an evaluation was given to Plaintiff. (*Id.* ¶ 69.) Gormack was involved in each of Plaintiff's performance reviews after the parties executed the Mediation Agreement. (*Id.* ¶ 72.)

In 2013, Plaintiff requested paid time off for two weeks of Ramadan and a part-time schedule for the remainder of the month of Ramadan. (*Id.* ¶ 45.) Plaintiff also requested to work an earlier shift on Mondays in July. (*Id.*) Kunath told Plaintiff there would not be an issue with scheduling her time off during Ramadan. (PSOF, ¶ 11.) Plaintiff had used her accrued paid time off during Ramadan in the past. (*Id.* ¶ 12.) After Kunath reviewed vacation requests for the year, she discovered that Plaintiff and another NMT requested the same time off. (DSOF, ¶ 46.) Normally, the more senior associate gets the requested time off. (*Id.* ¶ 47.) Kunath asked Plaintiff and the other NMT, who was more senior, to resolve the conflict among themselves, but they were unable to do so. (*Id.* ¶ 48.)

Kunath went to Human Resources for help to accommodate Plaintiff's request, and Human Resources suggested that Kunath offer Plaintiff a personal leave of absence for the entire holiday. (*Id.* ¶ 49.) Under Defendant's leave of absence policy, Plaintiff could have taken the entire holiday off while still being compensated for the amount of paid time off she had accrued. (*Id.* ¶ 50.) On June 17, 2013, Plaintiff applied for leave of absence but withdrew the application on the same day. (PSOF, ¶ 18.)

On June 10, 2013, Kunath received a report that an NMT informed the Cardiology Department that the Nuclear Medicine Department was short-staffed and that Kunath knew about the short staffing but did not care and did not resolve the issue. (DSOF, ¶ 54.) Kunath met with Plaintiff and the other NMT on duty that day. (*Id.* ¶ 55.) Kunath gave both the same Coaching Worksheet in connection with the incident. (*Id.* ¶ 56.) Two weeks later, Plaintiff wrote a letter to Gormack stating that Plaintiff believed the coaching was a retaliatory measure and that she was being treated unfairly. (*Id.* ¶ 61.) The letter did not state that the coaching was due to her race or religion. (*Id.* ¶ 62.)

On June 27, 2013, Plaintiff reported to Kunath that Dr. Gooneratne grabbed her arm. (*Id.* ¶ 17.) Plaintiff told Kunath that, during a patient meeting, Dr. Gooneratne grabbed Plaintiff's left arm very tightly and raised his voice, saying "let me answer the question." (*Id.* ¶ 18.) Kunath found Niemiec and informed him of Plaintiff's allegation. (*Id.* ¶ 20.) Niemiec informed Human Resources of the allegation and then spoke with Plaintiff. (*Id.* ¶ 21.) Plaintiff told Niemiec that Dr. Gooneratne grabbed her arm. (*Id.*) Niemiec and Kunath brought Plaintiff to Human Resources, where Plaintiff repeated her allegations to Tonya Fight, a Human Resources Consultant. (*Id.* ¶ 22.) The Human Resources Department investigated the complaint from

June 27, 2013, to July 1, 2013. (*Id.* ¶ 24.) Kunath called the patient and specifically asked if the patient saw any tension of physical contact between Plaintiff and Dr. Gooneratne. (*Id.* ¶ 30.) The patient stated that there was no physical contact between Dr. Gooneratne and Plaintiff and that Dr. Gooneratne did not raise his voice when he asked Plaintiff to let him speak. (*Id.*)[2] On July 1, 2013, Defendant issued a letter to Plaintiff, stating that they found no evidence to support the allegations. (PSOF, ¶ 32.)

Defendant's Corrective Action Policy provides that "[d]eliberately making false or malicious accusations against other associates; [d]ishonesty; and [f]ailure to act in accordance with the Behaviors of Excellence" are rule violations that can result in termination. (*Id.* ¶ 34.) Dayla Randolph, Vice President of Human Resources, made the recommendation to fire Plaintiff, which was accepted and implemented by Niemiec and Kunath. (DSOF ¶ 24; PSOF ¶ 33.) Defendant's stated reason for terminating Plaintiff was for filing a false allegation of assault against Dr. Gooneratne. (DSOF, ¶ 35.) The termination decision was communicated to Plaintiff on July 9, 2013. (*Id.* ¶ 36.) Plaintiff had a right to appeal the termination decision but declined to do so. (*Id.* ¶ 47.)

Plaintiff received performance review ratings of "Exceeds Expectations" or "Significantly Exceeds Expectations" while working at South Suburban Hospital. (*Id*. ¶ 8.) In her 2012 performance review, Plaintiff received a rating of "Exceeds Expectations" but was told she needed to improve her communications and not become defensive during stressful situations.

---

[2] Plaintiff argues that the patient's statements are inadmissible hearsay and should be struck. To the extent that the statements are not being offered for their truth but instead to demonstrate their effect on the listener, *i.e.*, giving Human Resources reason to think that Plaintiff's complaint was false, it is non-hearsay. *Cooksey v. Bd. of Educ. of City of Chicago*, 17 F. Supp. 3d 772, 784 (N.D. Ill. 2014) (citing *Dell'Aringa v. SBC Global Servs., Inc.,* No. 01 C 4995, 2002 WL 31109447, at *2 n. 3 (N.D.Ill. Sept. 20, 2002) (statement "offered not for its truth or falsity but for the relevant purpose of showing [the plaintiff's] belief" was "admissible for the non-hearsay purpose of showing its effect on the listener")).

(*Id.* ¶ 13.) In her 2013 performance review, Plaintiff received a rating of "Meets Expectations" and was again told she needed to improve her communications and not become defensive during stressful situations. (*Id.* ¶ 14.) Plaintiff received a raise after her 2013 performance review. (*Id.* ¶ 15.)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Factual disputes do "not preclude summary judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**ANALYSIS**

*Count I*

In Count I, Plaintiff alleges religious discrimination in violation of Title VII. Specifically, Plaintiff alleges that she was subjected to a hostile work environment, that Defendant failed to reasonably accommodate Plaintiff's request for time off during Ramadan, and that she was discharged due to her religious beliefs. Title VII prohibits employers from "fail[ing] or refus[ing] to hire or [discharging] any individual, or otherwise [discriminating] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to [*sic*] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e-(j).

<u>Hostile Work Environment</u>

To prevail on a hostile-work-environment claim, Plaintiff must show that: "(1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her [religion]; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009) (citing *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009)). In order to rise to the level of a hostile work environment, "conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an abusive working environment." *Id.* (citing *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005)). "In determining whether the evidence in support of a hostile work environment claim meets this standard, [a court considers] the totality

of the circumstances, . . . , including the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Porter v. City of Chicago*, 700 F.3d 944, 955-56 (7th Cir. 2012) (internal citations and quotations omitted).

Plaintiff worked for Defendant for approximately thirteen years. (DSOF, ¶ 3.) Plaintiff has presented evidence of three particular instances of discriminatory remarks or actions. Prior to the Mediation Agreement, Plaintiff's manager, John Nichols, stated, "I know you Muslims kill a poor little lamb to celebrate your holidays." (PSOF, ¶ 3.) Nichols also made comments about the Gulf War, how it had been instigated by Muslims, and that he had relatives in that war. (*Id.*) Plaintiff also heard her supervisor, Erin Egan, say that Egan and her boyfriend had decided against purchasing a home when they found that Muslims lived in the area. (*Id.* ¶ 6.) Finally, Kunath brought a pork dish to give to Plaintiff for lunch, knowing that Plaintiff did not eat pork as a Muslim. (*Id.* ¶ 7.) Viewing the record in the light most favorable to Plaintiff, the three to four sporadic comments and incidents over the course of almost thirteen years do not rise to the level of a hostile work environment. "[O]ffhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Scruggs*, 587 F.3d at 840-41. The conduct was not severe and pervasive enough to rise to the level of a hostile work environment, and there is no evidence that any conduct interfered with Plaintiff's work performance.

<u>Failure to Accommodate</u>

To make a *prima facie* case of religious discrimination based on a failure to provide reasonable accommodation, a plaintiff "must show that the observance or practice conflicting with an employment requirement is religious in nature, that she called the religious observance

8

or practice to her employer's attention, and that the religious observance or practice was the basis for her discharge or other discriminatory treatment." *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997) (citations omitted).

"Title VII requires employers to make reasonable efforts to accommodate the religious practices of employees unless doing so would cause the employer undue hardship." *Adams v. Retail Ventures, Inc.*, 325 F. App'x 440, 443 (7th Cir. 2009) (citing 42 U.S.C. § 2000e(j); *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 63 & n. 1 (1986); *Reed v. Great Lakes Cos.*, 330 F.3d 931, 934 (7th Cir. 2003)). A "reasonable accommodation" of an employee's religious practices is "one that 'eliminates the conflict between employment requirements and religious practices.'" *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir.1993) (quoting *Philbrook*, 479 U.S. at 70). The accommodation does not have to be the one preferred by an employee or the one most beneficial to the employee. *Philbrook*, 479 U.S. at 69. "Once the employer has offered an alternative that reasonably accommodates the employee's religious needs, however, the statutory inquiry is at an end." *Ilona*, 108 F.3d at 1576.

First, Defendant argues that Plaintiff's religious practice did not conflict with an employment requirement. Additionally, Defendant also argues that it offered a reasonable accommodation to Plaintiff where Plaintiff was offered a leave of absence for the entire holiday. (DSOF, ¶ 49.) Under Defendant's leave of absence policy, Plaintiff could have taken the entire holiday off while still being compensated for the amount of paid time off that she had accrued. (*Id.* ¶ 50.) On June 17, 2013, Plaintiff applied for a leave of absence but withdrew the application on the same day after she learned that a return to her position was not guaranteed. (PSOF, ¶ 18.) While this accommodation was not preferred by Plaintiff, a leave of absence would have eliminated the conflict between employment requirements and Plaintiff's religious

9

practices. Because Defendant offered an alternative that reasonably accommodated Plaintiff's religious needs, the statutory inquiry ends. *See Ilona*, 108 F.3d at 1576.

Discharge

For her Title VII claim, Plaintiff must show her termination was motivated by a discriminatory animus. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012); *see also E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015) (an individual's actual religious practice may not be a motivating factor in an employment decision). A plaintiff can prove illegal discrimination either directly or indirectly. *Greene v. Potter*, 557 F.3d 765, 768 (7th Cir. 2009). Using the direct method of proof, a plaintiff's claim survives summary judgment if she can demonstrate "triable issues as to whether discrimination motivated the adverse employment action." *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009) (citing *Nagle*, 554 F.3d at 1114). Direct evidence requires that evidence suggests that the decisionmaker "was animated by an illegal employment criterion or had a propensity . . . to evaluate employees based on illegal criteria." *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 791 (7th Cir. 2015). Using the indirect method, Plaintiff must show that: "(1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably." *Goodwin v. Bd. of Trustees of the Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006).

A plaintiff can establish triable issues of fact using direct or circumstantial evidence. *Nagle v. Vill. of Calumet Park,* 554 F.3d 1106, 1114 (7th Cir. 2009). "[C]ircumstantial evidence typically includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether

or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014). "Circumstantial evidence must point directly to a discriminatory reason for the employer's action." *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 777 (7th Cir. 2013) (internal quotation marks omitted).

Plaintiff has raised a factual question as to whether her religion was a motivating factor for her termination. Plaintiff argues that Defendant conducted an insufficient investigation in order to reach a pretextual reason to terminate her employment. Plaintiff maintains that she did not file a false report and that the investigation into the incident was inadequate. Specifically, there is a dispute as to whether Dr. Gooneratne was actually interviewed by anyone in Human Resources regarding the incident on June 27, 2013. (DSOF, ¶¶ 25-28.) There is also a dispute as to whether Human Resources offered Plaintiff health care and requested medical records related to the incident. (DSOF, ¶¶ 19, 23, 32; PSOF, ¶¶ 28-29.) A cursory investigation into alleged misconduct may cast doubt on the motivation of an adverse employment decision. *See Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 915 (7th Cir. 2010). However, "[e]vidence of pretext, by itself, may not always be enough to defeat summary judgment under the direct method." *Id.* (citing *Venturelli v. ARC Cmty. Serv.*, 350 F.3d 592, 601 (7th Cir. 2002)). When viewed in light of previous discriminatory comments and instances and the suspicious timing of Plaintiff's termination occurring days before the start of Ramadan, there is a triable issue of fact as to whether Plaintiff's termination was motivated by a discriminatory animus.

Defendant's Motion for Summary Judgment [31] is denied as to Count I.

*Count II*

In Count II, Plaintiff alleges racial discrimination in violation of Title VII. Plaintiff alleges that there was a hostile work environment based on her race and that she was discharged due to her race. As an initial matter, Plaintiff did not respond to any of the racial discrimination arguments made by Defendant. "[A] district court need not scour the record to determine whether there exists a genuine issue of fact to preclude summary judgment. Instead, the court can rely upon the non-moving party to show such a dispute if one exists." *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 567 (7th Cir. 1993). Furthermore, a party waives a claim when they do not cite both legal authority and supporting factual evidence. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 708 (7th Cir. 2010); *Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).

In responding to a summary judgment motion, the nonmoving party must "set forth specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "Failure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments and an abandonment of [her] claims." *De v. City of Chicago*, 912 F. Supp. 2d 709, 734 (N.D. Ill. 2012) (citing *Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (deeming plaintiff's negligence claim abandoned because he failed to delineate it in his brief to the district court in opposition to summary judgment); *Laborers' Int'l Union v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 2003) (stating that arguments not presented to the district court in response to a summary judgment motion are waived); *Donelson v. City of Chi.*, 272 F.Supp.2d 717, 726 (N.D. Ill. 2003) (finding that the plaintiff abandoned her claim because she provided no legal argument in support of her claim and because she made no serious effort to respond to the defendant's arguments);

*Oak Brook Hotel Co. v. Teachers Ins. & Annuity Ass'n of Am.*, 846 F. Supp. 634, 641 (N.D. Ill. 1994) (treating the plaintiff's failure to defend a particular claim in response to the defendant's motion for summary judgment as an abandonment of the claim)).

As stated above, for a hostile-work-environment claim, Plaintiff must show that: "(1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her [race]; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability." *Scruggs*, 587 F.3d at 840 (citing *Dear*, 578 F.3d at 611). Plaintiff has not presented any facts showing discrimination or harassment based on her race. Nor has she shown that any discriminatory act occurred that was based on her race. Plaintiff has not shown there is a genuine issue of fact for her Title VII race discrimination claim. *See Scott*, 550 U.S. at 380.

Defendant's Motion for Summary Judgment [31] is granted as to Count II.

*Count III*

In Count III, Plaintiff alleges racial discrimination in violation of 42 U.S.C. § 1981. Again, Plaintiff fails to respond to any of Defendant's arguments regarding this claim. As discussed above, "[f]ailure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments and an abandonment of [her] claims." *De*, 912 F. Supp. 2d at 734. Even if Plaintiff had not waived her arguments and abandoned her claims, Plaintiff failed to develop any facts showing that the alleged discriminatory conduct was based on her race. When analyzing § 1981 claims, the same standards apply as in Title VII claims. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 347 n. 2 (7th Cir. 1999) (citing J*ohnson v. City of Fort Wayne*, 91 F.3d 922, 940 n. 2 (7th Cir. 1996)). Plaintiff has not shown any facts supporting her racially-based hostile-work-

13

environment or discrimination claims under Title VII. Plaintiff has not shown there is a genuine issue of fact for her § 1981 claim. *See Scott*, 550 U.S. at 380.

Defendant's Motion for Summary Judgment [31] is granted as to Count III.

*Count IV*

In Count IV, Plaintiff alleges retaliation in violation of Title VII. Specifically, Plaintiff alleges that Defendant fostered hostile work conditions and terminated her in retaliation for filing an EEOC charge and writing letters to Human Resources opposing retaliatory treatment. Plaintiff did not respond to any of Defendant's arguments regarding retaliation. As discussed above, "[f]ailure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments and an abandonment of [her] claims." *De*, 912 F. Supp. 2d at 734.

In order to show retaliation, Plaintiff must provide evidence that: "(1) she engaged in a statutorily protected activity, (2) her employer took a materially adverse action against her, and (3) there was a causal connection between the two." *Malin v. Hospira, Inc.*, 762 F.3d 552, 558 (7th Cir. 2014). "Title VII retaliation claims must be proved according to traditional principles of but-for causation, . . . [which] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." U*niv. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Several years passed between the EEOC filing and Plaintiff's termination. "The mere passage of time is not legally conclusive proof against retaliation." *Malin*, 762 F.3d at 559 (7th Cir. 2014), reh'g denied (Sept. 16, 2014). "[I]f the time interval standing alone is long enough to weaken an inference of retaliation, the plaintiff is entitled to rely on other circumstantial evidence to support her claim." *Id.* at 560. However, Plaintiff has not presented any facts showing that her EEOC complaint or any letters to

14

Human Resources were the but-for cause of her termination. Plaintiff has not shown there is a genuine issue of fact for her Title VII retaliation claim. *See Scott*, 550 U.S. at 380.

Defendant's Motion for Summary Judgment [31] is granted as to Count IV.

*Count V*

In Count V, Plaintiff alleges that Defendant breached a Mediation Agreement that was created in exchange for Plaintiff not proceeding with an EEOC charge against Defendant. Specifically, Plaintiff argues that Defendant did not follow the proper procedures to evaluate Plaintiff's performance. Plaintiff did not respond to any of Defendant's arguments regarding this claim. As discussed above, "[f]ailure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments and an abandonment of [her] claims." *De*, 912 F. Supp. 2d at 734.

Under the terms of the Mediation Agreement, the parties agreed that "should any future issues arise concerning [Plaintiff's] terms or conditions of her employment, then [Plaintiff] can initiate a facilitated discussion process between her supervisor and/or his or her supervisor, herself and Human Resources by contacting Michele Gormack, Human Resources Generalist II or her replacement." (DSOF, ¶ 68.) The parties also agreed that Plaintiff's direct supervisor would submit performance evaluations to Human Resources for review prior to issuing the evaluation to Plaintiff and that Human Resources would be present when an evaluation was given to Plaintiff. (*Id.* ¶ 69.)

Plaintiff has not presented any facts showing that the Mediation Agreement was not followed, or that proper evaluation procedures were not followed. It is undisputed that Gormack reviewed the performance evaluations and discussed the ratings with Plaintiff's supervisors and that Gormack was present at the performance evaluations. (*Id.* ¶¶ 73, 75.) Plaintiff has also not

15

pointed to any instances of Defendant refusing to initiate a facilitated discussion process for any issue regarding Plaintiff's employment when Plaintiff requested such a discussion. Plaintiff has not shown there is a genuine issue of fact. *See Scott*, 550 U.S. at 380.

Defendant's Motion for Summary Judgment [31] is granted as to Count V.

## **CONCLUSION**

Defendant's Motion for Summary Judgment [31] is granted in part and denied in part. Defendant's Motion for Summary Judgment [31] is denied as to Count I. Defendant's Motion for Summary Judgment [31] is granted as to Counts II, III, IV, and V.

Date: _____June 27, 2016_____    _____
                                                                              JOHN W. DARRAH
                                                                              United States District Court Judge